IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHARRISE LOTT,** | Case No. 1:20-cv-1515 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **PLAYHOUSE SQUARE HOTEL, LLC, et al.** | MEMORANDUM OPINION AND ORDER |
| **Defendants** | |

Currently pending is the Motion for Summary Judgment filed by Defendants Playhouse Square Hotel, LLC ("Hotel") and Tim Meyer ("Meyer") (collectively, "Defendants").  (Doc. No. 19.)  Plaintiff Charrise Lott ("Lott") filed a Brief in Opposition to Defendants' Motion for Summary Judgment, to which Defendants replied.  (Doc. Nos. 22, 24.)  For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

I.     Background

Defendant Hotel operates the Crowne Plaza Hotel in the Playhouse Square district in downtown Cleveland, Ohio.  Plaintiff Charrise Lott worked in the Defendant Hotel's accounting department from April 16, 2018 through June 4, 2019.  (Doc. No. 20-1, PageID# 265; Doc. No. 19-1, PageID# 199.)  Defendant Meyer worked as the Hotel's general manager from approximately July 2018 through February 2020.  (Doc. No. 23, PageID# 422.)

In the course of her employment, Lott received an employee handbook that outlined the Hotel's workplace policies and procedures.  (Doc. No. 19-3, PageID# 222-53.)  The handbook directed employees to bring questions related to Family and Medical Leave Act ("FMLA") eligibility

to their human resources representatives. (*Id.* at PageID# 249.) The handbook also detailed the Hotel's internal attendance policy. (*Id.* at PageID# 232.) The handbook set out the policy as follows:

> If, due to an emergency, you cannot arrive to work on the scheduled day/time, you are to personally speak to your supervisor or department manager to explain your absence at least three hours in advance of the time you are scheduled to report to work. . . . Three instances of absenteeism, tardiness, and/or early leaves within a rolling 60-day period are considered excessive and may result in disciplinary action, up to and including termination of employment. This will not apply to absences that are covered by federal, state, or local law. If you are absent from your shift and fail to contact your supervisor directly, this is considered a "no call, no show". Three consecutive instances of "no call, no show" or three separate instances of "no call, no show" within one year may result in termination of employment.

(*Id.*)

According to Lott, she was diagnosed with a hernia sometime around April 2018. (Doc. No. 20-1, PageID# 267.) Lott testified that, due to the cost of the hernia repair surgery, she sought out Dr. Emmanuel Mallol Cotes, a plastic and reconstructive surgeon in Santiago, Dominican Republic, to perform the hernia repair surgery. (*Id.*) Additionally, Lott not only decided to have Dr. Mallol Cotes perform a hernia repair surgery, she also decided that Dr. Mallol Cotes should perform a tummy tuck surgery at the same time. (*Id.*) According to Lott, she was Dr. Mallol Cotes's patient for approximately six months prior to her surgery in May 2019. (*Id.* at PageID# 266.) Lott did not attend an in-person appointment with Dr. Mallol-Cotes until the day before her surgery. (*Id.* at PageID# 267.) Instead, she communicated with him via the telephone and messaging service WhatsApp. (*Id.*)

In early May 2019, Lott notified the Hotel's human resources department that she would need some time off for the hernia repair surgery only.[1] (*Id.* at PageID# 265-66.) According to Lott, Lesley Bolden, the Hotel's human resources manager, directed Lott to a Family Medical Leave Act

---

[1] Neither Lott's Medical Certification, nor any of her May and June 2019 communications with Defendants, make any mention of her tummy tuck surgery. (Doc. No. 19-1, PageID# 187-90.)

2

("FMLA") Certification of Health Care Provider form on the Internet. (*Id.*; *see also* Doc. No. 19-1, PageID# 187-90.) Lott provided the form to Dr. Mallol Cotes. (*Id.*)

Dr. Mallol Cotes completed Lott's medical certification form (the "Medical Certification") on May 7, 2019. (*Id.* at PageID# 190.) According to the Medical Certification, Dr. Mallol Cotes's medical specialty is "PLASTIC & RECONSTRUCTIVE." (*Id.* at PageID# 187.) Dr. Mallol Cotes listed the "approximate date condition commenced" as "05/29/2019". (*Id.* at PageID# 188.) He estimated that the probable duration of the condition would be 8 weeks. (*Id.*) Under the question "Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?," Dr. Mallol Cotes checked "Yes" and wrote "05/30/2019 PROCEDURE 05/31/2019 DISCHARGED." (*Id.*) Under "Date(s) you treated the patient for condition," Dr. Mallol Cotes wrote "05/29/19 PRE-OP APPT/ 05/30/19 SURGERY / 06/03/19 POST OP APPT." (*Id.*) Dr. Mallol Cotes also checked "Yes" next to the question "Is the employee unable to perform any of his/her job functions due to the condition". (*Id.*) Dr. Mallol Cotes wrote "DO NOT LIFT HEAVY OBJECTS, SIT OR STAND FOR LONG TIME PERIODS FOR AT LEAST 08 WEEKS." (*Id.*)

When asked to "[d]escribe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such as medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment)," Dr. Mallol Cotes wrote "PRESENTED PAIN IN THE ABDOMEN, FREQUENT URINATE, SLIGHTLY BLEEDING, MADE A HERNIA REPAIR." (*Id.*, reproduced as in original.) Dr. Mallol Cotes estimated that Lott would be incapacitated from "05/29/19 UNTIL 07/29/19," but checked "no" in response to the question whether Lott would require follow-up treatments or a reduced work schedule to account for her medical condition. (*Id.* at PageID# 189.) Dr. Mallol Cotes's signature is largely illegible on the

3

final page of the form, though the date of completion—"05/07/2019"—is clearly legible. (*Id.* at PageID# 190.)

Lott submitted her Medical Certification to Bolden on May 13, 2019. (*Id.* at PageID# 194.) On May 17, 2019, Defendant Tim Meyer, the Hotel's general manager, notified Lott, via in-person conversation and letter, that her Medical Certification was insufficient and requested that Lott provide additional information. (Doc. No. 20-1, PageID# 271-72; Doc. No. 19-1, PageID# 191.) According to Meyer's letter, Lott's Medical Certification was insufficient because it was "vague and ambiguous regarding whether the leave requested is FMLA-qualifying . . . ." (Doc. No. 19-1, PageID# 191.) In his letter to Lott, Meyer directed her to cure the ambiguities in her Medical Certification:

> In order to cure the vagueness and ambiguity in the Certification and to further evaluate your request, you will need to provide the following additional information from your Health Care Provider, Dr. Mallol Cotes, no later than May 24, 2019:
>
> > 1) Is the surgery scheduled for May 30, 2019 due to an illness, injury, impairment or physical condition? The Certification refers to hernia repair in the past tense so it is unclear what the reason is for inpatient care or whether this is continuing treatment related to a prior hernia repair, or whether this is related to something else entirely. Please have your doctor clarify.
> > 2) What, if any, regimen of continuing treatment is expected to be employed?
> > 3) Given that your job function does not require lifting heavy objects or sitting or standing for long time periods, please have the doctor explain what job functions you will be unable to perform and the expected duration of your inability to perform those job functions.

(*Id.*, emphasis in original.)

Lott did not provide any clarification by May 24, 2019. Instead, Lott resubmitted the same Medical Certification to Meyer up to four separate times. (Doc. No. 20-1, PageID# 272.)

On May 29, 2019, Lott underwent hernia repair surgery and a tummy tuck. (Doc. No. 20-1, PageID# 273.) Lott did not stay overnight at the hospital, but instead stayed for seven days at "Dr.

Mallol's recovery house" in the Dominican Republic.² (*Id.*) Lott was discharged from the recovery house after seven days and returned to the United States thereafter. (*Id.*)

Also on May 29, 2019, Defendants notified Lott via email and letter that, "[u]nless the requested clarifying information is received by the undersigned by May 30, 2019, [her] request for FMLA leave is denied." (Doc. No. 19-1, PageID# 194.) In the same letter, Defendants also notified Lott that she had "four (4) days of PTO time available to use, as of the end of the day on May 29, 2019." (*Id.*) If Lott "so request[ed], [she] may use up to the four (4) remaining days of PTO for time away from work, beginning on May 30, 2019 (and until it may be determined that your leave qualifies as FMLA leave)." (*Id.*) Finally, Defendants warned Lott that "[a]dditional absences (if FMLA leave is not approved) will be unexcused and subject you to appropriate disciplinary action." (*Id.* at PageID# 194-95.)

Lott did not respond to Defendants' letter by May 30, 2019. On May 31, 2019, Lott notified Meyer that her "documentation was sen[t] on May 24 [ ] [b]y Dr[.] Emmanuel Mallol." (*Id.* at PageID# 197.) Lott told Meyer that her supervisor Renee had access to Lott's work email inbox and that Renee could either provide Meyer with Lott's email password or else print Dr. Mallol Cotes's email for Meyer. (*Id.*) Meyer informed Lott that he could not authorize another employee to access her email inbox and directed her to resend the information to the Hotel. (*Id.* at PageID# 196.) Lott wrote back that the doctor would "resend it shortly." (*Id.*) Nothing in the record suggests that Dr. Mallol Cotes or any of his employees resent additional documentation to Defendants on May 31, 2019 or at any time thereafter. Further, Lott did not address her paid time off ("PTO") in any way in

---

² According to Lott, Dr. Mallol Cotes's patients stay in the recovery house together. (Doc. No. 20-1, PageID# 273.) Periodically, Dr. Mallol Cotes came to see patients in the recovery house. (*Id.*)

5

her reply to Meyer or indicate in any way that she wished to apply PTO to any absences on or after May 30, 2019. (*Id.*)

Lott was absent from work on May 30, May 31, and June 3, 2019. (*Id.* at PageID# 199.) Lott did not contact her supervisor ahead of her absences on the 30th, 31st, or 3rd, nor did Lott attempt to apply any paid time off to those days. On June 4, 2019, Defendants informed Lott that her employment was terminated for two reasons. (*Id.* at PageID# 198-99.) First, Lott's employment was terminated because she accrued three "no call, no show" absences which, according to the Employee Handbook, was grounds for termination. (*Id.* at PageID# 199.) Second, Lott's employment was also terminated because Defendants determined that there were discrepancies between the work slips Lott submitted to Defendants and the physical therapist's treatment notes, which resulted in Lott "being paid for time not required for these appointments."[3] (*Id.*)

Lott brought the instant suit on June 2, 2020 in the Cuyahoga County Court of Common Pleas. (*See* Doc. No. 1-1.) Lott brings two claims: (1) FMLA interference, and (2) FMLA retaliation. (Doc. No. 12.) Defendants removed the case to this Court on July 8, 2020. (*See* Doc. No. 1.)

---

[3] In November 2018, Lott sustained an injury in a workplace slip-and-fall accident that necessitated physical therapy treatments. (Doc. No. 23, PageID# 471.) Lott and the Hotel entered into an agreement whereby the Hotel would pay Lott for the time she spent at her physical therapy appointments, as well as reasonable travel time to or from the appointments to the Hotel (approximately 45 minutes of travel time). (Doc. No. 19-1, PageID# 200; Doc. No. 20-1, PageID# 301.) Lott claimed her physical therapy appointments took 3 hours. (Doc. No. 19-1, PageID# 202-17.) Thus, the Hotel paid Lott for 3 hours of work. However, prior to May 2019, Defendants learned that discrepancies existed between the time that Lott claimed she spent at physical therapy and the time that Lott's physical therapist marked down in Lott's medical charts. (*Id.*) While Lott claimed she attended several 3-hour physical therapy appointments, Lott's physical therapist's notes reflect that her sessions lasted only 30-45 minutes each. (Doc. No. 19-1, PageID# 202-17.) Even accounting for Lott's travel time, the Hotel concluded that it overcompensated Lott for her physical therapy appointments based on Lott's apparent misrepresentations. (Doc. No. 19-1, PageID# 199.) The Court need not further discuss this second separate and independent basis for terminating Lott's employment however, because, as discussed *infra*, the Court concludes that Lott cannot establish a prima facie case of FMLA retaliation. Thus, the Court need not proceed to the second, burden-shifting step of the *McDonnell Douglas* analysis. *See infra*, III.B. FMLA Retaliation claim.

## II.     Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*,

593 F. App'x at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### III. Analysis

The FMLA "guarantees 'eligible employees' twelve weeks of unpaid leave during any twelve month period for certain family or medical events . . . ." *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008). An employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by the FMLA]," nor may an employer "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(1)-(2). The Sixth Circuit "recognize[s] two discrete theories of recovery under the FMLA: (1) the so-called "interference" or "entitlement" theory arising from § 2615(a)(1), and (2) the "retaliation" or "discrimination" theory arising from § 2615(a)(2)." *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). In the instant case, Defendants move for summary judgment on Lott's interference and retaliation claims. (Doc. No. 19.)

#### A. FMLA Interference Claim

"The FMLA states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by this Act].'" *Novak v. MetroHealth Medical Center*, 503 F.3d 572, 577 (6th Cir. 2007) (quoting § 2615(a)(1)). Employees who believe that they were denied their FMLA rights may assert a cause of action for FMLA interference. *Id.* (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006)). To prevail on an FMLA interference claim, the plaintiff must establish:

8

> (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled.

*Id.* (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)). In this case, the parties dispute whether Lott was entitled to FMLA leave.

Defendants argue that Lott fails to establish that she was entitled to FMLA leave for two reasons. (Doc. No. 19, PageID# 153-58.) First, Defendants argue that Lott failed to establish that she suffered from a serious medical condition. (*Id.*) Second, Defendants argue that Lott failed to timely provide a sufficient medical certification. (*Id.*) The Court need not address Defendants' first argument, however, because the Court concludes that Lott did not provide Defendants with a sufficient medical certification and, thus, Defendants properly denied Lott's request for FMLA leave. *See Kinds v. Ohio Bell Tel. Co.*, 742 F.3d 648, 654 (6th Cir. 2013) ("[B]ecause the failure to provide a medical certification is an independent basis for denying FMLA leave notwithstanding the appropriateness of that leave, we need not consider whether Kinds actually had a serious health condition during the period in question.").

To "garner [the FMLA's] benefit, an employee must abide by the conditions provided in 29 U.S.C. § 2613, which provides, *inter alia*, that an employer may require an employee to submit a doctor's certification of the employee's condition." *Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 554 (6th Cir. 2006). "A doctor's certification is sufficient if it states (1) the date on which the serious health condition began, (2) the probable duration of the condition, (3) the appropriate medical facts within the health care provider's knowledge, and (4) a statement that the employee is unable to perform her job duties." *Swegan v. Shepherd of the Valley Lutheran Retirement Servs., Inc.*, No.

9

4:11-CV-02179, 2013 WL 1284309, at *6 (N.D. Ohio Mar. 25, 2013) (citing *Novak*, 503 F.3d at 578 (citing 29 U.S.C. § 2613(b))).

Where the employee's medical certification is either incomplete or insufficient, the FMLA regulations provide:

> (c) Complete and sufficient certification. The employee must provide a complete and sufficient certification to the employer if required by the employer in accordance with §§ 825.306, 825.309, and 825.310. The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient. A certification is considered incomplete if the employer receives a certification, but one or more of the applicable entries have not been completed. **A certification is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive.** The employer must provide the employee with seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure any such deficiency. If the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave, in accordance with § 825.313. A certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification.

29 C.F.R. § 825.305(c) (emphasis added).

Further, an employer may deny FMLA leave if an employee fails to provide the employer with a complete and sufficient certification:

> (d) Consequences. At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. **If the employee fails to provide the employer with a complete and sufficient certification, despite the opportunity to cure the certification as provided in paragraph (c) of this section,** or fails to provide any certification, **the employer may deny the taking of FMLA leave, in accordance with § 825.313.** It is the employee's responsibility either to furnish a complete and sufficient certification or to furnish the health care provider providing the certification with any necessary authorization from the employee or the employee's family member in order for the health care provider to release a complete and sufficient certification to the employer to support the employee's FMLA request. This provision will apply in any case where an employer requests a certification permitted by these regulations, whether it is the initial certification, a recertification, a second or third opinion, or a

fitness for duty certificate, including any clarifications necessary to determine if such certifications are authentic and sufficient.

§ 825.305(d) (emphasis added). An employee's "[f]ailure to timely provide a medical certification for which an employer has properly asked will generally preclude an employee's FMLA-interference claim." *Kinds*, 724. F.3d at 652 (citing *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 567 (6th Cir. 2005)).

The Court concludes that Dr. Mallol Cotes's May 7, 2019 Medical Certification is insufficient because it is vague and ambiguous as to whether Lott had a serious health condition that rendered her eligible for FMLA leave. Without this information, Defendants could not determine whether Lott would be incapacitated and thus unable to perform her essential job duties during the period for which Lott sought leave. *See, e.g., Swegan*, 2013 WL 1284309, at *5-7 (concluding that the plaintiff's medical certification was insufficient because it was vague and ambiguous as to whether she was incapacitated during the period for which she sought leave).

In the Medical Certification—which he dated May 7, 2019—Dr. Mallol Cotes certified that Lott's medical condition would commence on May 29, 2019, approximately 3 weeks in the future. (Doc. No. 19-1, PageID# 188.) He certified that Lott would undergo a procedure on May 30, 2019 and would be discharged on May 31, 2019 but did not specify what kind of procedure Lott would undergo. (*Id.*) He certified that Lott would be unable to perform her job duties as a result of this unnamed procedure and unable to lift heavy objects or sit or stand for a long period of time. (*Id.*) Under "Relevant Medical Facts," Dr. Mallol Cotes described the following facts that related to the condition for which Lott sought leave: "PRESENTED PAIN IN THE ABDOMEN, FREQUENT URINATE, SLIGHTLY BLEEDING, MADE A HERNIA REPAIR." (*Id.*) Nowhere in the Relevant Medical Facts does Dr. Mallol Cotes note that Lott is suffering from an umbilical hernia *as of May*

11

*7, 2019.* The phrase "MADE A HERNIA REPAIR" is clearly written in the past tense. However, the Medical Certification appears to relate to a condition *that has not yet commenced* and a procedure *that Lott has not yet received*. Further, none of the other Relevant Medical Facts (e.g., stomach pain or frequent urination) suggest that Lott suffered from a serious health condition that would render her unable to complete her essential job duties. This Medical Certification insufficiently identifies a serious health condition that would incapacitate Lott and necessitate her taking FMLA leave.

Lott's argument that Meyer "had no questions about why Plaintiff needed FMLA leave" misses the point. (Doc. No. 22, PageID# 412.) Under the FMLA regulations, Defendants were permitted to require that Lott provide them with a complete and sufficient medical certification before approving her FMLA leave request. § 825.305(c). Defendants notified Lott in writing that they found her certification insufficient and identified the additional information necessary to render her certification sufficient. (Doc. No. 19-1, PageID# 191-92.) It is undisputed that Lott did not provide Defendants with additional clarification regarding the ambiguities in her Medical Certification. (*See* Doc. No. 20-1, PageID# 271-72.) Indeed, Lott testified that Meyer asked her for additional information "two or three times, maybe four, and each time he was provided the information from my doctor." (*Id.*) She testified that Meyer "**was asking for the same information . . . which was provided each time.**" (*Id.*, emphasis added.) In other words, Lott was on notice that Defendants considered her Medical Certification insufficient due to its ambiguities, but she chose to repeatedly submit the same insufficient Medical Certification. (*Id.*)

Lott not only failed to clarify her Medical Certification by Defendants' initial May 24, 2019 deadline, she also failed to provide any clarification after Defendants extended the deadline by which she could submit a clarification. In their May 29, 2019 letter to Lott, Defendants notified Lott that

12

"[u]nless the requested clarifying information is received by the undersigned by May 30, 2019, your request for FMLA leave is denied." (Doc. No. 19-1, PageID# 194.) Lott did not respond by May 30, 2019. Instead, she responded to Meyer on May 31, 2019, telling Meyer that Dr. Mallol Cotes sent a clarification to Lott's work email address on May 24, 2019 and that Lott's supervisor Renee could provide Meyer access to Lott's emails. (*Id.*) However, there is absolutely no evidence in the record that Dr. Mallol Cotes sent *any* supplemental medical certification whatsoever to Lott, either by May 24, 2019 or May 30, 2019. Lott offers no proof that such additional medical certification existed, let alone that she or Dr. Mallol Cotes provided it to Defendants prior to their termination of Lott's employment. Despite multiple opportunities to do so, Lott did not provide Defendants with a sufficient medical certification and did not attempt to apply PTO to her otherwise unexcused absences. "If the employee fails to provide the employer with a complete and sufficient certification, despite the opportunity to cure the certification . . . the employer may deny the taking of FMLA leave . . . ." § 825.305(d). Lott failed to provide Defendants with a sufficient certification, despite having had the opportunity to do so. Thus, Defendants were permitted to deny Lott FMLA leave. *Id. See also Kinds*, 724 F.3d at 654 (citing *Frazier*, 431, F3d. at 566-67).

Moreover, Defendants offered Lott the opportunity to apply her four days of accrued PTO to her absences beginning on May 30, 2019, yet Lott chose not to do so. (Doc. No. 19-1, PageID# 194-95.) Had Lott chosen to advise the Defendants to apply PTO to her absences, her unexcused absences on May 30, May 31, June 3, and June 4, 2019 would have been excused instead of treated as no call, no show absences. However, Lott did not so advise Defendants, she did not report to work, and she failed to notify her supervisor Renee of her absences, on May 30, May 31, June 3, and June 4, 2019, in contravention of the Hotel's attendance policy. (*Id.* at PageID# 232.) Thus, by the morning of

13

June 4, 2019—the day on which Defendants terminated Lott's employment—Lott had accumulated three no call, no show absences. (*Id.* at PageID# 199.) The employee handbook clearly provides that three no call, no show absences may result in termination of employment. (*Id.* at PageID# 232.) Thus, Lott's employment was subject to termination for violating Defendants' attendance policy.

Because Lott fails to establish that she was entitled to FMLA leave, her FMLA interference claim necessarily fails. Further, because Lott violated the Hotel's attendance policy and accumulated three no call, no show absences, Lott's employment was subject to termination by the Hotel. Defendants' Motion for Summary Judgment is granted with respect to Lott's FMLA interference claim.

### B. FMLA Retaliation Claim

The FMLA provides that an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." § 2615(a)(2). "FMLA retaliation claims that rely on circumstantial or indirect evidence, as opposed to direct evidence, are evaluated under the burden-shifting framework set forth by *McDonnell Douglas*." *Knaup v. Molina Healthcare of Ohio, Inc.*, No. 2:19-cv-166, 2021 WL 807676, at *9 (S.D. Ohio Mar. 3, 2021) (citing *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 451 (6th Cir. 2017)). The plaintiff must first demonstrate a prima facie case of discrimination, which is not an "onerous" burden. *Id.* "To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) he engaged in an activity protected by the Act, (2) this exercise of his protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." *Tennial v. United Parcel Serv., Inc.* 840 F.3d 292, 308 (6th Cir. 2016).

14

Lott's FMLA retaliation claim fails because she cannot establish a prima facie case of FMLA retaliation. Specifically, Lott did not engage in an activity protected by the FMLA. For the reasons discussed *supra*, Lott's leave was not FMLA leave and, thus, Lott did not engage in any protected activity under the FMLA. Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Lott's FMLA retaliation claim.

### IV. Conclusion

Accordingly, for the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. No. 19) is GRANTED.

**IT IS SO ORDERED.**

Date: August 27, 2021

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE